UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Ohio National Life Assurance Corp.

        Plaintiff,

   v.

Eric Shippy, et al.,

        Defendants.

Case No. 1:06cv110

Judge Michael R. Barrett

## ORDER

This matter is now before the Court pursuant to Defendants' motion to dismiss or in the alternative, motion to transfer venue (Doc. 4).  Plaintiff's filed a memorandum in opposition (Doc. 10) as well as an affidavit of Kevin Chafins (Doc. 18) in support of its argument.  Defendants also filed a reply brief (Doc. 11).  This matter is now ripe for review.

    I.    Background.

This is a breach of contract action which was originally filed in the Hamilton County Court of Common Pleas and was removed to this Court pursuant to 28 U.S.C. §1441.  Plaintiff's principal place of business is in Cincinnati, Ohio.  Defendant Eric Shippy is a resident of Michigan and Defendant Impact Financial Group, Inc. ("IFG") is a Nevada Corporation with it principal place of business located in Michigan.  Mr. Shippy is the President and CEO of IFG.

    II.    Arguments.

Defendants argue that this Court lacks personal jurisdiction over both Defendant Shippy and Defendant IFG or, in the alternative, that venue is proper in Michigan. Defendants assert that the contract between the parties was executed by Defendants in Michigan and that all negotiations relevant to the contract took place in Michigan (Doc. 4, Exhibit B ¶5). Defendants further assert that the contract defines the role of the Defendants as that of an "independent contractor" and that the territory Defendants were to perform its duties were solely within the state of Michigan (Id.; Contract, Section III). Defendant Shippy also states, and Plaintiff's do not dispute, that his duties were to recruit and train agents to sell Ohio National Insurance products within the state of Michigan, that at no time was he licensed to sell insurance in Ohio, that he never operated in Ohio and that all of his activities related to the contract were performed in Michigan (Doc. 4, Exhibit B, ¶6-7). See also Contract, ¶1.01.

Plaintiff argues that there are sufficient minimum contacts to establish personal jurisdiction. Plaintiff states that Defendants had frequent communications via phone and wire with Plaintiff in its Cincinnati, Ohio offices during the course of its business relationship. Plaintiff also argues that the contract contemplated enforcement in Ohio as the contract provided that it would be construed under Ohio law (Contract, ¶5.05). Plaintiff states that Defendants were compensated by commissions paid as a percentage of sales and that Defendants received support and benefits including insurance coverage for Defendant Shippy and his family (Doc. 2, ¶3) as well as a line of credit that was secured by a promissory note executed by Defendant Shippy (Doc. 18, ¶7). Plaintiff also states that it had oversight over Defendants and that much of Defendants business activities were subject to Plaintiff's approval, including the sale of

policies and all activities associated with Plaintiff's image. (Doc. 18 ¶10). In the affidavit of Kevin Chafins, Mr. Chafins states that Defendant Shippy and other representatives of Defendant IFG attended four various orientation programs conducted by Plaintiff in its Cincinnati offices. These orientation programs were conducted between February 2004 and June 2004. Mr. Chafins also states that "Plaintiff recruited Shippy because they thought he would be a good General Agent for them" (Doc 18 ¶8). Additionally, Plaintiff argues that as a result of Defendants breach of the contract that Plaintiff paid Defendants undeserved commissions for which Defendants refused to return and that Defendants were assessed a contractual fine by a decision making body in Ohio that they also refused to pay.

    III.    Analysis.

Plaintiffs correctly point out that unless an evidentiary hearing is held that the plaintiff's burden is "relatively slight" and the court must consider the pleadings and affidavits in a light most favorable to the plaintiff. *American Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988). The only allegation in the complaint relating to jurisdiction is that the contract in question was executed in Cincinnati, Ohio (Doc. 2, ¶1). Defendants rely primarily on *Calphalon Corp. v. Rowlette*, 228 F.3d 718 (6th Cir. 2000) where as Plaintiff relies primarily on *Burger King v. Rudzewicz*, 471 U.S. 462 (1985). The Sixth Circuit in *Calphalon* summarized the law clearly:

> The exercise of personal jurisdiction is valid only if it meets both the state long-arm statute and constitutional due process requirements. *See Nationwide Mutual Ins. Co. v. Tryg Int'l Ins. Co.*, 91 F.3d 790, 793 (6th Cir. 1993) (citing *Reynolds v. International Amateur Athletic Fed'n*, 23 F.3d 1110, 1115 (6th Cir 1994)). Although the Ohio Supreme Court has ruled that the Ohio long-arm statute does not

> extend to the constitutional limits of the Due Process Clause, our central inquiry is whether minimum contacts are satisfied so as not to offend "traditional notions of fair play and substantial justice." See *Cole v. Mileti*, 133 F.3d 433, 436 (6th Cir. 1998) (*citing Goldstein v. Christiansen*, 70 Ohio St. 3d 232, 638 N.E.2d 541, 545 n.1 (Ohio 1994) (per curiam)).

*Calphalon Corp. v. Rowlette*, 228 F.3d at 721. In determining specific personal jurisdiction a three-part test has been established in *Southern Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374, 381 (1968). First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable. The purposeful availment prong of the Southern Machine test, which ensures that a defendant will not be haled into a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts, is essential to a finding of personal jurisdiction. *Calphalon Corp. v. Rowlette,* 228 F.3d at 721. Furthermore, "the Supreme Court has emphasized, with respect to interstate contractual obligations, that 'parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other State for the consequence of their activities." *Calphalon Corp. v. Rowlette*, 228 F.3d at 722 (*citing Burger King v. Rudzewicz,* 471 U.S. 462, 85 L. Ed. 2d 528, 105 S. Ct. 2174 (1985); *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 62 L. Ed. 2d 490, 100 S. Ct. 559 (1980); *Hanson v. Denckla*, 357 U.S. 235, 2 L. Ed. 2d 1283, 78 S. Ct. 1228 (1958)).

It has been clearly established that an individual's contract with an out-of-state party alone can not automatically establish sufficient minimum contacts in the other party's home forum. *Burger King v. Rudzewicz*, 471 U.S. at 478. Certain factors that are to be considered in determining whether a defendant purposefully established minimum contacts within the forum state are prior negotiations and contemplated future consequences, the terms of the contract and the parties' actual course of dealings. *Id.* at 479. Additionally, the Court should focus on the quality of the parties' relationship. *Calphalon Corp. v. Rowlette*, 228 F.3d at 722.

One significant factual difference between this case and *Burger King* is that Rudzewicz deliberately sought out Burger King in hopes of operating a franchise and in doing so "deliberately '[reached] out beyond' Michigan and negotiated with a Florida corporation for the purchase of a long-term franchise and the manifold benefits that would derive from affiliation with a nationwide organization." *Burger King v. Rudzewicz*, 471 U.S. at 479-480 *citing Travelers Health Assn. v. Virginia,* 339 U.S. 643, 647 (1950). That is not the case here as Plaintiff states that it recruited Defendants.

Defendants did attend four separate seminars at Plaintiff's home office in Cincinnati; however, it is likely that Defendants would have attended those seminars where ever the Plaintiff's home office was located. See *Calphalon Corp., supra,* where the Court found that Defendant's phone, mail, and fax contact with Calphalon in Ohio and the physical visits there occurred solely because Calphalon chose to be headquartered in Ohio, not because Rowlette sought to further its business and create "continuous and substantial" consequences there. *Calphalon Corp. v. Rowlette,* 228 F.3d at 723. The Court went on to state that "arguably, Rowlette would have served as

Calphalon's representative in the designated states, regardless of Calphalon's base of operation." *Id.* Thus finding that "Rowlette's contacts were precisely the type of 'random,' 'fortuitous,' and 'attenuated' contacts that the purposeful availment requirement is meant to prevent from causing jurisdiction." *Id.*

The fact that the contract contains a choice of law provision does not automatically establish sufficient contacts with the forum state. See *Burger King*, 471 U.S. at 482 (a choice of law provision, though alone insufficient to establish jurisdiction, can reinforce [a] deliberate affiliation with the forum State and the reasonable foreseeability of possible litigation there). Although Defendants are on notice that Ohio law governs any disputes regarding the contract, the contract does not contain a choice of forum clause dictating that litigation ensure in Ohio. Here, as in *Calphalon*, 228 F.3d at 723, Defendants did not make a deliberate affiliation with Ohio nor could it reasonably foresee possible litigation there.

Here Defendants reside in Michigan, were recruited by Plaintiffs in Michigan, and performed activities in their territory, which was also in Michigan. Defendants were not licensed to sell insurance in Ohio and the only contacts the Defendants had with Ohio are telephone calls that may have been placed to Ohio and letters that may have been sent to Ohio.[1] Based upon the foregoing, the Court finds that Defendants contacts with Ohio were the result of "random," "fortuitous," or "attenuated" contacts.

The Court must now look to the second prong of the Southern Machine test: did the cause of action arise from the defendant's activities in the forum state. The "arising

---

[1] There is no allegation of this in the Complaint or any statement relative to communications in the affidavit of Kevin Chafin that was filed.

from" requirement under the this prong is satisfied when the "operative facts of the controversy arise from the defendant's contacts with the state." *Calphalon Corp. v. Rowlette*, 228 F.3d at 723. See also *Southern Machine,* 401 F.2d at 384. "Only when the operative facts of the controversy are not related to the defendant's contact with the state can it be said that the cause of action does not arise from that contract." *Id*. at 723-724 *citing Southern Machine*, 401 F.2d at n.29.

However, even if the cause of action did not arise from the defendant's activities in the forum state the exercise of jurisdiction may still be deemed reasonable if, according to the third prong of the Southern Machine Co. test, the consequences of the act or breach caused by the defendant have a substantial enough connection with the forum state. *Id.*

The Sixth Circuit in *Calphalon Corp. v. Rowlette* found that the facts at issue in that case did not occur in the forum state nor were the consequences of the breach substantially connected to the forum state. In its finding the Court stated that "Rowlette's performance of the terms of the agreement and any earning of commissions occurred in the states of Rowlette's sales territory, not Ohio. Moreover, because Rowlette's connection with Ohio was not substantial as required by the third prong of the Southern Machine Co. test, it is necessary for the plaintiff to demonstrate that the facts at issue actually occurred in the forum state." *Calphalon Corp. v. Rowlette*, 228 F.3d at 724.

In this matter, Plaintiff cannot show that Defendants had a substantial connection to Ohio. Therefore, the cause of action does not arise from Defendants contact with Ohio, nor do the consequences of its acts have a substantial enough connection with

Ohio to make the exercise of jurisdiction over the defendant reasonable. The Defendants were not attempting to sell products in Ohio or recruit agents in Ohio, but rather had contact with Ohio only because the plaintiff chose to reside there. *See Calphalon Corp. v. Rowlette,* 228 F.3d at 723.

In *Kerry Steel Inc. v. Paragon Industries, Inc.*, 106 F.3d 147, 151 (6th Cir. 1997), the Sixth Circuit held that any negative economic effect on the plaintiff did not create a determinative impact on the state economy, as "the locus of such a monetary injury is immaterial, as long as the obligation did not arise from a privilege the defendant exercised in the forum state." Plaintiff here argues that he has suffered financial losses in Ohio as a result of Defendants breach of contract. However, the Court has already found that "the obligation did not arise from a privilege the defendant exercised in the forum state." *Id.* Furthermore, although the alleged damages are significant their impact on the state economy is so nominal that it does not create a substantial connection with the forum state to establish personal jurisdiction.

Because the Court finds Defendants argument as to personal jurisdiction well taken the Court will not address Defendants alternative request to transfer venue. Defendants' motion to dismiss is hereby GRANTED. However, Plaintiff shall be permitted to refile this matter in Michigan. The Clerk of Courts is directed to close this matter and strike it from the docket of this Court.

**IT IS SO ORDERED.**

    s/Michael R. Barrett
Michael R. Barrett, Judge
United States District Court